**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| DECIDE4ACTION SC INC., a South Carolina corporation, and DECIDE4ACTION HOLDING, LLC, a Florida limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>ALTIZON INC., a New Jersey corporation<br><br>Defendant. | Case No.:<br><br>**Jury Demand** |

# COMPLAINT

**Preliminary and Permanent Injunction Requested**

Plaintiffs DECIDE4ACTION SC INC. ("D4A SC") and DECIDE4ACTION HOLDING, LLC ("D4A Holding"), (collectively, "Plaintiffs"), by and through its attorneys, for its Complaint against defendant, ALTIZON INC. ("Altizon" or "Defendant"), alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action seeking injunctive and monetary relief for Defendant's intentional infringement of the copyrights in the proprietary software programs[1] that D4A Holding owns, of which D4A SC is the exclusive licensee (the "Copyrighted Works"), misappropriation of Plaintiffs trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"), and the Tennessee Uniform Trade Secrets Act, TENN. CODE ANN. § 47-25-1701 et seq.

[1] The software programs are identified as SMART, BEVERAGE SUITE, DECIDE4ACTION, and DECIDE4ACTION v2, and their registration certificates are attached hereto as Exhibits A–D respectively.

("TUTSA"), statutory procurement of breach of contract under TENN. CODE ANN. § 47-50-109, common-law intentional interference with contract (inducement of breach of contract), intentional interference with business relationships, and unjust enrichment.

2. D4A SC is a cutting-edge software company that creates software and hardware that assists with production monitoring, quality management, scanning and verification, utilities and asset health, and forms and workflows.

3. Through its license with D4A Holding, its parent company, D4A SC sublicenses the software and hardware solutions to various industries, including food and beverage, textiles, and related manufacturing environments.

4. D4A SC also has the right from D4A Holding to sue for infringement related to the software programs it sublicenses to its customers.

5. D4A SC is the successor in interest to Computer Control + Integration which was a software company that had been in this business since at least as early as 1988. D4A SC acquired Computer Control + Integration in October of 2017, and its name was changed to DECIDE4ACTION on July 8, 2020.

6. D4A SC has offices in Greenville, SC; Quebec City, Canada; Victoriaville, Canada; Hertogenbosch, Netherlands; and Paris, France.

7. D4A Holding has sixty-five employees and more than 300 large industrial customers worldwide. D4A SC has eighteen employees and more than forty customers worldwide, one of which is Coca-Cola Consolidated, Inc. ("CCCI").

8. D4A SC has maintained a commercial relationship with CCCI for approximately twenty-five years and has been invoicing CCCI approximately $60,000 per month for deployment of the Copyrighted Works to CCCI's various facilities across the United States.

9. Over the past twenty-five years, D4A SC deployed its extensive proprietary manufacturing platform covering approximately nine integrated systems, including:

- Production monitoring, OEE Downtime analysis and manufacturing execution (Production4action);
- Laboratory information management systems and CIP Monitoring Systems (Lab4action);
- Quality management including Product and component scanning and Traceability and verification (Quality4action);
- Proprietary high-speed label-verification systems involving both hardware and software components (Label4action).

10. Production4action, Lab4action, and Quality4action are the commercial names under which Plaintiffs market these functions; SMART, BEVERAGE SUITE, DECIDE4ACTION, and DECIDE4ACTION v2 are the titles of the underlying software programs registered with the United States Copyright Office.

11. Production monitoring, OEE, and downtime analysis (Production4action) are embodied in the DECIDE4ACTION software program and its successor, DECIDE4ACTION v2. Laboratory information management and quality analysis (Lab4action), including product and packaging quality indexes, net contents, torque, statistical process control, and quality hold, release, and destroy records, are embodied in the BEVERAGE SUITE software program. Quality checks, product and component scanning, traceability, package verification, and high-speed label verification (Quality4action, including Label4action) are embodied in the SMART and DECIDE4ACTION v2 software programs. Plant assessments, including good manufacturing practice (GMP) assessments, PIT inspections, and pre-production checklists, are embodied in the SMART software program.

12. The licensed deliverables identified in D4A SC's agreements with CCCI, including Net Content/Torque, Package Verification, and Quality Hold, are functions of these software programs. A true and correct copy of the 2007 Agreement, as defined below, is being filed under Seal as Exhibit E. *See* Exhibit E at § 1(d)(v).

13. It has come to Plaintiffs' attention that Defendant and CCCI have engaged in what appears to be a large-scale copying and reproduction of Plaintiffs' software platform, including protection expression from each of the Copyrighted Works. Although CCCI and Defendant have attempted to maintain the secrecy of this initiative, it is apparent that the suite of software products Defendant has installed to replace Plaintiffs' software (the "Infringing Work") is substantially similar to, and in substantial part copied from or derived from, one or more of the Copyrighted Works, as alleged more fully below.

14. D4A SC learned of this on or about September 8, 2026, when D4A SC's personnel, while providing support for a Plaintiff-supported computer at CCCI's production facility in Sandston, Virginia, using remote access that CCCI provided for that purpose, saw Defendant's replacement software open on that computer. D4A SC thereafter observed the same software, in the same manner, on a computer at CCCI's facility in Bishopville, South Carolina, that D4A SC owns and supports. Defendant's software is served from web addresses on CCCI's network, including dfxoperatorconsole.ccbcc.com and dfxquality.ccbcc.com; its screens display "© 2026 Altizon Inc."; and its browser tabs carry the name "Datonis Digital Factory," which is Defendant's platform.

15. Plaintiffs' copyright infringement claims arise out of and are based on Defendant's copying, reproduction, distribution, and sale of software programs that are copied from and are substantially similar to Plaintiffs' Copyrighted Works. Plaintiffs sue for copyright infringement

under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 et seq.

16. Plaintiffs' remaining claims arise out of Defendant's acquisition, use, and disclosure of Plaintiffs' confidential and trade secret information, and Defendant's inducement of CCCI to breach its contractual obligations to D4A SC, and are asserted under the DTSA, 18 U.S.C. § 1836 et seq., and the statutory and common law of Tennessee.

17. Plaintiffs seek all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiffs' actual damages and Defendant's profits from Defendant's willfully infringing conduct or, in the alternative, statutory damages, together with Plaintiffs' costs and its reasonable attorneys' fees, and other monetary relief. Plaintiffs further seek injunctive relief, damages, exemplary damages, and attorneys' fees under the DTSA and TUTSA; treble damages under TENN. CODE ANN. § 47-50-109; and compensatory damages, punitive damages, and restitution under Tennessee common law.

**JURISDICTION AND VENUE**

18. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 18 U.S.C. § 1836(c), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

19. This Court has supplemental jurisdiction over Plaintiffs' claims arising under Tennessee law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' claims under the Copyright Act and the DTSA that they form part of the same case or controversy under Article III of the United States Constitution.

20. This Court has personal jurisdiction over Defendant because Defendant has purposefully directed its activities at Tennessee, including by marketing, licensing, distributing,

and installing the Infringing Work at CCCI's facility in Nashville, Tennessee, and Plaintiffs' claims arise out of and relate to those activities.

21. Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendant may be found in this district. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district, namely, the first installation of the Infringing Work in Nashville, Tennessee.

## PARTIES

22. D4A SC is a corporation formed under the laws of South Carolina and does business worldwide. D4A Holding is a limited liability company formed under the laws of Florida and does business worldwide.

23. On information and belief, Defendant is a corporation that is incorporated in New Jersey and has its principal place of business at 2107 Goldfinch Blvd., Unit #205, Princeton, NJ 08540. Defendant is headquartered in Princeton, NJ, but is a Pune, India-based company.

## FACTS

### A. Plaintiffs and Their Copyrighted Works

24. D4A Holding owns all right, title and interest to the Copyrighted Registration and D4A SC is the nonexclusive licensee with respect to the Copyrighted Works. Therefore, as should be understood herein, "Plaintiffs' Copyrighted Works" refers to the software products SMART, BEVERAGE SUITE, DECIDE4ACTION, and DECIDE4ACTION v2 owned by D4A Holding and licensed to and sublicensed by D4A SC. Copies of the Copyright Registrations attached hereto and incorporated herein as Exhibits A–D.

25. On or around 2014, the SMART software program was fixed into a tangible medium of expression and was first published on August 1, 2014. Copyright in the SMART

software program is held by D4A Holding, and D4A SC is the nonexclusive licensee of the rights under that copyright at issue in this action, including the right to enforce them against CCCI and Defendant.

26. The SMART software program is wholly original, and D4A SC is the nonexclusive licensee of the rights under copyright in the SMART software program that are at issue in this action.

27. D4A Holding is the owner of valid and subsisting United States Copyright Registration No. TX 9-637-988 for the SMART software program, issued by the United States Copyright Office. Attached as Exhibit A is a true and correct copy of the registration certificate for Registration No. TX 9-637-988.

28. On or around 2014, D4A the BEVERAGE SUITE software program was fixed into a tangible medium of expression and was first published on August 1, 2014. Copyright in the BEVERAGE SUITE software program is held by D4A Holding, and D4A SC is the nonexclusive licensee of the rights under that copyright at issue in this action, including the right to enforce them against CCCI and Defendant.

29. The BEVERAGE SUITE software program is wholly original, and D4A SC is the nonexclusive licensee of the rights under copyright in the BEVERAGE SUITE software program that are at issue in this action.

30. D4A Holding is the owner of valid and subsisting United States Copyright Registration No. TX 9-639-801 for the BEVERAGE SUITE software program, issued by the United States Copyright Office. Attached as Exhibit B is a true and correct copy of the registration certificate for Registration No. TX 9-639-801.

31. On or around 2021, the DECIDE4ACTION software program was fixed into a tangible medium of expression and was first published on June 1, 2021. Copyright in the DECIDE4ACTION software program is held by D4A Holding, and D4A SC is the nonexclusive licensee of the rights under that copyright at issue in this action, including the right to enforce them against CCCI and Defendant.

32. The DECIDE4ACTION software program is wholly original, and D4A SC is the nonexclusive licensee of the rights under copyright in the DECIDE4ACTION software program that are at issue in this action.

33. D4A Holding is the owner of valid and subsisting United States Copyright Registration No. TX 9-637-981 for the DECIDE4ACTION software program, issued by the United States Copyright Office. Attached as Exhibit C is a true and correct copy of the registration certificate for Registration No. TX 9-637-981.

34. On or around 2022, the DECIDE4ACTION v2 software program was fixed into a tangible medium of expression and first published it on October 1, 2022. Copyright in the DECIDE4ACTION v2 software program is held by D4A Holding, and D4A SC is the nonexclusive licensee of the rights under that copyright at issue in this action, including the right to enforce them against CCCI and Defendant.

35. The DECIDE4ACTION v2 software program is wholly original, and D4A SC is the nonexclusive licensee of the rights under copyright in the DECIDE4ACTION v2 software program that are at issue in this action.

36. D4A Holding is the owner of valid and subsisting United States Copyright Registration No. TX 9-637-979 for the DECIDE4ACTION v2 software program, issued by the

United States Copyright Office. Attached as Exhibit D is a true and correct copy of the registration certificate for Registration No. TX 9-637-979.

37. D4A SC has licensed the SMART, BEVERAGE SUITE, DECIDE4ACTION and DECIDE4ACTION v2 (collectively referred to as the "Copyrighted Works") to CCCI via the original 2007 Agreement and the subsequent Support Agreement (defined below). *See* Exhibits E and F respectively. D4A SC has also licensed the Copyrighted Works to forty other customers worldwide, including several other bottling facilities around the world. All public depictions of the Copyrighted Works are accompanied by an appropriate copyright notice indicating that D4A Holding is the owner of all rights in the work.

38. The Copyrighted Works are of significant value to Plaintiffs because Plaintiffs derive all of their revenue from the Copyrighted Works. D4A Holding, through its sublicensees, including D4A SC is the only company in the world that offers a full suite of software programs that integrate production monitoring and OEE, laboratory and quality management, product and component scanning and traceability, electronic forms and workflows, and high-speed label verification in a single platform built for beverage bottling and food manufacturing operations.

39. In fact, D4A SC serves many large Coca-Cola bottlers, including Coca-Cola United, Coca-Cola Beverages Florida, Coca-Cola Beverages Northeast, and Swire Coca-Cola, as well as numerous Pepsi bottlers, all Refresco bottlers, and most Lassonde facilities. As a result, D4A SC is intimately familiar with the principal software suppliers serving Coca-Cola and beverage bottlers worldwide.

**B. <u>Defendant's Infringing Conduct</u>**

40. On information and belief, Defendant is engaged in the sale of AI software for the food and beverage industry, CPG, and industrial sectors. Defendant has a software solution called

DFX that unifies digital operations, connects disparate production lines and utility systems to provide real-time visibility.

41. Based on D4A SC's experience serving approximately forty major customers worldwide, competing vendors generally provide only one or two products that are partially comparable to individual Decide4Action systems. In its twenty-five years of existence, D4A SC has not encountered another provider capable of independently replacing the overall breadth and integration of their platform under comparable circumstances.

42. Based on an extensive review of Altizon's website, prior to Altizon's recent relationship with CCCI, Altizon only provided software that collected machine and sensor data through its DFX platform and displayed that data in general-purpose dashboards and applications for equipment productivity (OEE), quality metrics, maintenance, and energy and utility consumption. Altizon did not offer software for laboratory information management, beverage-specific quality checks such as net contents, torque, and quality hold, release, and destroy records, product and component scanning and traceability, package verification, plant assessments and checklists, or high-speed label verification.

43. Subsequent to Defendant's business relationship with CCCI, Defendant is now suddenly offering a full suite of software products that compete directly with Plaintiffs, and this all happened right around the same time that CCCI served a letter of termination of the Support Agreement (defined below). A true and correct copy of the Termination Letter is attached hereto as Exhibit G.

44. CCCI had extensive access to Plaintiffs' deployed applications, configurations, workflows, databases, and technical environment, many of which are confidential and trade secret information owned by Plaintiffs.

45. Defendant had no known history of implementing comparable systems for a Coca-Cola bottler or any other bottler and had not previously participated in a comparable CCCI bid.

46. Defendant had no publicly demonstrated software suite broad enough to replace Plaintiffs' integrated systems. In fact, Defendant had never previously provided comparable systems to a Coca-Cola bottler and could not reasonably have developed a complete software-and-hardware suite for CCCI without significant access to, or sponsorship involving the replication of, the Copyrighted Works.

47. Defendant, nevertheless, appeared suddenly capable of pursuing the replacement of the entire suite of products, namely, the Copyrighted Works, very recently when they installed the Infringing Work in a Nashville facility. Defendant has also installed the Infringing Work at CCCI facilities in Charlotte, North Carolina; Bishopville, South Carolina; and Sandston, Virginia.

48. Defendant subsequently advertised for Charlotte-based implementation personnel with food-and-beverage, PLC, SCADA, database, plant-network, and manufacturing-deployment experience, and has since installed the Infringing Work at CCCI's Charlotte, North Carolina facility.

49. Because Defendant's primary technical and development operations are based in Pune, India, proprietary information provided by CCCI may have been transferred outside the United States.

50. On or around September 8, 2026, Plaintiffs became aware that CCCI was utilizing Defendant and CCCI's internal IT department, including its Vice President of Technical Services, Melanie Sabella, to copy Plaintiffs' Copyrighted Works, to train Defendant's employees on Plaintiffs' systems, including the Copyrighted Works, to give Defendant access to Plaintiffs' deployed applications, and to show Defendant, Plaintiffs' confidential and proprietary training

manuals, configurations, workflows, databases, and technical environment, many of which are highly confidential trade secret information belonging to Plaintiffs.

51. On or about October 13, 2026, Plaintiffs sent Defendant a Demand Letter and Preservation Letter, a copy of which is attached hereto as Exhibit H. As of the date of this Complaint, Defendant has not substantively responded to the letter and has not ceased the conduct described herein.

52. Defendant has copied, published, created derivative works, and sold a competing suite of software programs to CCCI that is substantially similar to and/or a derivative work based on the Copyrighted Works, individually and/or in combination. Without limitation, Defendant has copied the literal and non-literal elements of each Copyrighted Work, including its structure, sequence, and organization, its screen displays, forms, reports, and authored text, and the selection, coordination, and arrangement of the elements within each Copyrighted Work.

53. On information and belief, the Infringing Work has been distributed and installed at a CCCI facility in Nashville, Tennessee located at 407 Craighead Street, Nashville, TN 37204. The Infringing Work has also been distributed and installed at CCCI facilities in Sandston, Virginia; Bishopville, South Carolina; and Charlotte, North Carolina.

54. On information and belief, Defendant obtained physical possession of or otherwise viewed Plaintiffs' Copyrighted Works and intentionally copied and/or made a derivative work of the Copyrighted Works to create the Infringing Work. That Defendant copied the Copyrighted Works when it created the Infringing Work is evidenced by the striking similarities between the Copyrighted Works and the Infringing Work, which cannot possibly be explained other than as a result of copying and Defendant's access to the Copyrighted Works through CCCI, as alleged herein.

55. Some of the similarities between the Copyrighted Works and the Infringing Work include copying misspellings on various screen displays. For example, Plaintiffs' "Palletizer Start Up" quality check, as configured in Plaintiffs' software at CCCI, asks: "Does the pallet tag contain the optium date code, current time, date to ship to the trade, and a bar code?" and "The stretch film is applied per CCBCC QA Policy meeting all overalp requirements and film width and gauge requirements?" "Optium" is a typing error for "optimum," and "overalp" is a typing error for "overlap." Plaintiffs' web application also holds the first question with a third error, "curent" for "current." On September 14, 2026, at CCCI's Bishopville facility, the Infringing Work's "PET PALLETIZER QUALITY CHECK- START UP" screen displayed the second question identically in all nineteen words, including "overalp," and displayed the first question with four inserted words but retaining both "optium" and "curent." A developer writing these questions independently would not reproduce the same three errors.

56. Defendant copied the Copyrighted Works without Plaintiffs' authorization, consent, or knowledge, and without any remuneration to Plaintiffs.

57. The Infringing Work is nearly identical to the Copyrighted Work. Given these similarities, the Infringing Work is substantially similar to and virtually indistinguishable from Plaintiffs' Copyrighted Works in its overall flow and layout. Among other things: (a) of the thirty-six entries in the Infringing Work's Actions menu as of October 13, 2026, thirty-three correspond to a module of the Copyrighted Works; (b) on seven data-entry forms (CO2, nitrogen, and sugar receiving, quality hold, line samples, syrup batching, and water treatment), the Infringing Work takes the user through the same steps in the same order as the Copyrighted Works; (c) the Infringing Work reproduces idiosyncratic field labels from the Copyrighted Works word for word, such as "Weight Of Sugar (Grams)," "Density Value Obtained," and "Shipment No"; (d) the

Infringing Work prints “QUALITY ASSURANCE HOLD TAG,” “QUALITY ASSURANCE RELEASE TAG,” and “QUALITY ASSURANCE DESTROY TAG” tags with the fields of the Copyrighted Works in the same arrangement, including the line “Destroy Specific Times? YES / NO Times:”; (e) the Infringing Work calculates its “Total Quality Index” as BEVERAGE SUITE does, by multiplying a “Product QI” by a “Package QI” rather than averaging them; and (f) the Infringing Work offers the same set of laboratory calculators, the same “Compliance History Report,” and the same set of statistical process control statistics and charts as BEVERAGE SUITE. None of these choices is dictated by function, efficiency, or the bottling process.

58. Since Defendant copied the Copyrighted Works to create the Infringing Work, it has now licensed or sold the Infringing Work to CCCI and installed the Infringing Work in CCCI plants in Nashville, Tennessee; Charlotte, North Carolina; Bishopville, South Carolina; and Sandston, Virginia. On information and belief, Defendant continues to infringe the Copyrighted Works and is continuing to interfere with and misappropriate Plaintiffs’ business. Defendant is still adding to the Infringing Work: between September 14 and October 13, 2026, Defendant added, at both the Sandston and Bishopville facilities, a “Syrup Case Yield Calculator” that reproduces BEVERAGE SUITE’s “Units To Case Conversion” and a “Beverage Constant Calculator” that takes the same four inputs as BEVERAGE SUITE’s Phosphoric Acid Assay Beverage calculator.

59. As a result of Defendant's actions described above, Plaintiffs have been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and sale of the Infringing Work. Defendant has never accounted to or otherwise paid Plaintiffs for its use of the Copyrighted Works.

60. Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs for which Plaintiffs have no adequate remedy at law.

## C. Plaintiffs' Trade Secrets, the CCCI Agreement, and Defendant's Inducement of CCCI's Breach

61. In addition to the copyright protection afforded to the Copyrighted Works, Plaintiffs owns valuable confidential and proprietary information that they have developed over more than twenty-five years and at substantial expense, including, without limitation: (a) the architecture, structure, sequence, and organization of their software; (b) Plaintiffs' database schemas, data structures, and data-mapping logic; (c) the configurations, parameters, and settings by which Plaintiffs' systems are tailored to and integrated with each customer's production lines, including those of CCCI; (d) Plaintiffs' methods of integrating its software with programmable logic controllers (PLCs), SCADA systems, plant networks, and label-verification hardware; (e) Plaintiffs' proprietary label-verification algorithms and hardware-software integration designs; (f) Plaintiffs' workflows, electronic-forms logic, and implementation and deployment methodologies; (g) Plaintiffs' calculations and key performance indicators; (h) Plaintiffs' confidential training manuals, user guides, technical documentation, and system-administration materials; and (i) Plaintiffs' machine-interface specification, which defines the proprietary data-table structure (register map), the machine-status bit assignments, and the production-count, machine-speed, recipe-pattern, and downtime fault-code elements by which the raw signals from each machine's programmable logic controller are translated into Plaintiffs' standardized, real-time production and downtime analysis, and the cross-reference by which each machine's unique downtime fault codes are mapped to Plaintiffs' standardized downtime causes (collectively, "Plaintiffs' Trade Secrets"). As should be understood herein, Plaintiffs' Trade Secrets refers to any of the aforementioned confidential and proprietary information belonging to either D4A SC or D4A Holding, including

D4A SC's confidential and proprietary information licensed to CCBCC under the 2007 Agreement and Support Agreement, as those terms are defined below at Paragraph 66, and/or D4A SC's confidential and proprietary information assigned to D4A Holding under the Intra Group Software License Agreement effective October 14, 2023 attached hereto as Exhibit I.

62. Plaintiffs' Trade Secrets are not generally known to, and are not readily ascertainable through proper means by, other persons who could obtain economic value from their disclosure or use. Plaintiffs' Trade Secrets cannot be derived from the publicly observable functions of Plaintiffs' systems; they are the product of decades of development, testing, and refinement at Plaintiffs' customers' facilities. For example, Plaintiffs' machine-interface specification cannot be ascertained from the observable operation of Plaintiffs' software and must be supplied by Plaintiffs; even CCCI's own controls engineers have had to request it from Plaintiffs in order to integrate equipment, most recently on or about August 18, 2026, when a CCCI controls engineer requested from Plaintiffs the list of machine tag mappings and downtime codes for CCCI's Twinsburg facility.

63. Plaintiffs' Trade Secrets derive independent economic value, actual and potential, from not being generally known. As alleged above, Plaintiffs are, on information and belief, the only company that offers an integrated suite of comparable breadth, and Plaintiffs' Trade Secrets are what enable it to do so. A competitor in possession of Plaintiffs' Trade Secrets could avoid years of development time and expense and replicate Plaintiffs' platform, as Defendant has done here.

64. Plaintiffs take measures that are reasonable under the circumstances to maintain the secrecy of Plaintiffs' Trade Secrets, including (a) licensing its software only under written agreements that restrict its use, copying, and disclosure and require customers to maintain its

confidentiality; (b) delivering software to customers in object-code form only and withholding its source code, except where written agreements impose strict custody and use restrictions of any delivered source code; (c) restricting access to its systems through password protection and user-level access controls; (d) requiring its employees and contractors to execute confidentiality agreements; (e) marking its documentation and training materials as confidential and proprietary, and placing proprietary notices on its software and documentation; and (f) limiting access to Plaintiffs' Trade Secrets to persons with a need to know.

65. Plaintiffs' Trade Secrets relate to products and services used in, and intended for use in, interstate and foreign commerce, including D4A SC's systems deployed at eleven CCCI production facilities in eight states and at the facilities of D4A SC's more than forty customers worldwide.

66. D4A SC's relationship with CCCI is governed by (a) the Services and License Agreement effective July 5, 2007 (the "2007 Agreement"), between D4A SC, under its predecessor in interest Computer Control + Integration, Inc., and CCBCC Operations, LLC ("CCBCC"), and (b) the DECIDE4ACTION Standard Systems Support Agreement effective January 1, 2019 (the "Support Agreement"), which is expressly "governed by" the 2007 Agreement and identifies the licensed software and support services provided at each of CCBCC's production facilities, including its facility in Nashville, Tennessee. *See* Exhibits E and F.

67. The 2007 Agreement and the Support Agreement, together with all purchase orders issued under them, are referred to collectively as the "CCCI Agreement," and, for ease of reference, CCCI and CCBCC are referred to collectively as "CCCI."

68. Under Section 16(b) of the 2007 Agreement, D4A SC owns "all rights, title and interests in and to the Deliverables," which includes, but is not limited to, D4A SC's computer

programs, software, designs, operating instructions and training documentation D4A SC granted CCBCC only a non-exclusive license to use the "Licensed Deliverables," as defined under the 2007 Agreement, solely for the respective internal business purposes of CCBCC or its Affiliates.

69. Section 15 of the 2007 Agreement defines "Confidential Information" to include, among other things, software, technical processes and formulas, source codes, [and] product designs[.]" In Section 15(b), CCBCC agreed, to maintain the confidentiality of the Confidential Information and to not disclose the information to any unauthorized third party without D4A SC's written authorization. CCBCC further acknowledged that a breach of confidentiality may cause irreparable damage. Under Section 31, CCBCC's obligations under Sections 15 and 16(b) survive any termination of the 2007 Agreement.

70. Section 17 of the 2007 Agreement required D4A SC to deliver copies of the source code for its Licensed Deliverables to CCBCC, but strictly limits that source code's storage, access, and use and prohibits any use, modifying, adapting or distributing the source code for Licensed Deliverables unless a defined "Release Event" occurs. No such release event has occurred.

71. The Support Agreement further provides that the D4A SC software cannot be copied, duplicated or exported to other system PC's within respective locations, or other sites, without the express written authorization from DECIDE4ACTION, and that the software always remains the property of D4A SC. Plaintiffs have never authorized CCCI to copy, duplicate, or export its software programs to Defendant or to any system operated by or for Defendant.

72. Defendant knew of the CCCI Agreement and of D4A SC's longstanding business relationship with CCCI. On information and belief, CCCI engaged Defendant specifically to replace Plaintiffs' systems, and Defendant was informed by CCCI—and in any event knew from the nature of that engagement and from the proprietary and confidentiality notices on Plaintiffs'

software and documentation—that Plaintiffs' systems were owned by Plaintiffs and licensed to CCCI under an agreement that restricted their copying, use, and disclosure to third parties and that required CCCI to keep Plaintiffs' technical information confidential.

73. Defendant was not authorized to receive Plaintiffs' Licensed Deliverables or Confidential Information. Even if CCCI engaged Defendant as a "Contractor" as defined under the 2007 Agreement, the 2007 Agreement permits a Contractor at most to use the Licensed Deliverables for CCBCC's own internal business purposes and permits copying and derivative works only as "required for a Permitted User to use the Licensed Deliverables." Nothing in the 2007 Agreement authorizes CCCI or any Contractor to use Plaintiffs' software, documentation, or Confidential Information to design, build, or train a replacement system, much less to develop a competing commercial product that Defendant markets to others.

74. Notwithstanding that knowledge, Defendant induced and procured CCCI to breach the CCCI Agreement by, on information and belief, requesting and obtaining from CCCI access to Plaintiffs' deployed applications, configurations, workflows, databases, training manuals, and technical environment; participating in sessions in which CCCI's internal IT personnel, including CCCI's Vice President of Technical Services, Melanie Sabella, demonstrated Plaintiffs' systems and trained Defendant on them; and obtaining copies of Plaintiffs' software, documentation, and data structures for the purpose of replicating Plaintiffs' platform.

75. As a result of Defendant's inducement, CCCI breached the CCCI Agreement by, among other things: (a) disclosing Plaintiffs' Confidential Information, including Plaintiffs' Trade Secrets, to Defendant, an unauthorized third party, without Plaintiffs' prior written authorization, in breach of Section 15(b)(ii) of the 2007 Agreement; (b) using Plaintiffs' Confidential Information to assist Defendant in designing, configuring, and implementing a replacement for Plaintiffs'

systems—a purpose other than receiving Plaintiffs' services or fulfilling obligations under the 2007 Agreement—in breach of Section 15(b)(iii); (c) failing to take reasonable precautions to prevent the unauthorized disclosure and use of Plaintiffs' Confidential Information, in breach of Section 15(b)(i) and (v); (d) using, copying, and permitting the creation of derivative works based on the Licensed Deliverables for purposes other than CCBCC's internal business purposes and beyond what is required to use them, in excess of the license granted in Section 16(b); (e) copying, duplicating, or exporting Plaintiffs' application software to systems operated by or for Defendant without Plaintiffs' express written authorization, in breach of the Support Agreement; and (f) accessing, using, or disclosing the source code for the Licensed Deliverables in the absence of a release event, in breach of Section 17(c) and (e).

76. The breaches described above do not depend on whether CCCI has exercised, or may exercise, any right to terminate the CCCI Agreement. CCCI's confidentiality obligations and the limits on its license survive termination under Section 31 of the 2007 Agreement, and no termination right permits CCCI to disclose Plaintiffs' Confidential Information to a competitor or to use Plaintiffs' software to build its replacement.

77. Defendant acquired Plaintiffs' Trade Secrets knowing or having reason to know that they were acquired by improper means, including CCCI's breach of its duty to maintain their secrecy and limit their use and Defendant's own inducement of that breach. Defendant has since used and disclosed Plaintiffs' Trade Secrets, without Plaintiffs' express or implied consent, to develop, configure, market, and install the Infringing Work and to displace Plaintiffs' business relationship with CCCI.

78. Defendant's conduct was intentional, willful, and malicious, and was undertaken without legal justification for the purpose of appropriating the benefit of Plaintiffs' decades of investment and taking Plaintiffs' business with CCCI for itself.

79. As a direct and proximate result of Defendant's conduct, Plaintiffs have lost, and will continue to lose, the revenue from its relationship with CCCI, which currently amounts to approximately $60,000 per month; have suffered a loss in the value of Plaintiffs' Trade Secrets; and face the threatened loss of other customer relationships to a competitor that has unlawfully obtained Plaintiffs' platform.

**COUNT ONE**
**Federal Copyright Infringement of the SMART Program**
**(17 U.S.C. § 501)**

80. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

81. The SMART software program is an original literary work in the form of a computer program containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 et seq. D4A SC is the nonexclusive licensee of the rights under copyright in and to the SMART software program that are at issue in this action and is entitled to sue for their infringement under 17 U.S.C. § 501(b). D4A Holding owns valid copyright registration for the SMART software program, attached as Exhibit A and identified as TX9-637-988.

82. Through Defendant's conduct alleged herein, including Defendant's copying, reproduction, distribution, and sale, of the Infringing Work, which is copied from, and substantially similar to protected expression in, the SMART software program, whether or not Defendant also copied any other Copyrighted Work, without Plaintiffs' permission, Defendant has

directly infringed Plaintiffs' rights in the SMART software program in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

83. On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge, or in reckless disregard, of Plaintiffs' rights in the SMART software program and has enabled Defendant illegally to obtain profit therefrom.

84. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

85. Alternatively, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendant's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

86. Plaintiffs further are entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

87. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the SMART software program. Plaintiffs therefore are entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT TWO
## Federal Copyright Infringement of the BEVERAGE SUITE Program
## (17 U.S.C. § 501)

88. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

89. The BEVERAGE SUITE software program is an original literary work in the form of a computer program containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 et seq. D4A SC is the nonexclusive licensee of the rights under copyright in and to the BEVERAGE SUITE software program that are at issue in this action and is entitled to sue for their infringement under 17 U.S.C. § 501(b). D4A Holding owns valid copyright registration for the BEVERAGE SUITE software program, attached as Exhibit B and identified as TX9-639-801.

90. Through Defendant's conduct alleged herein, including Defendant's copying, reproduction, distribution, and sale, of the Infringing Work, which is copied from, and substantially similar to protected expression in, the BEVERAGE SUITE software program, whether or not Defendant also copied any other Copyrighted Work, without Plaintiffs' permission, Defendant has directly infringed Plaintiffs' rights in the BEVERAGE SUITE software program in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

91. On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge, or in reckless disregard, of Plaintiffs' rights in the BEVERAGE SUITE software program and has enabled Defendant illegally to obtain profit therefrom.

92. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial. Pursuant

to 17 U.S.C. § 504(b), Plaintiffs are also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

93. Alternatively, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendant's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

94. Plaintiffs further are entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

95. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the BEVERAGE SUITE software program. Plaintiffs therefore are entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**COUNT THREE**
**Federal Copyright Infringement of the DECIDE4ACTION Program**
**(17 U.S.C. § 501)**

96. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

97. The DECIDE4ACTION software program is an original literary work in the form of a computer program containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 et seq. D4A SC is the nonexclusive licensee of the rights under copyright in and to the DECIDE4ACTION software program that are at issue in

this action and is entitled to sue for their infringement under 17 U.S.C. § 501(b). D4A Holding owns valid copyright registration for the DECIDE4ACTION software program, attached as Exhibit C and identified as TX9-637-981.

98. Through Defendant's conduct alleged herein, including Defendant's copying, reproduction, distribution, and sale, of the Infringing Work, which is copied from, and substantially similar to protected expression in, the DECIDE4ACTION software program, whether or not Defendant also copied any other Copyrighted Work, without Plaintiffs' permission, Defendant has directly infringed Plaintiffs' rights in the DECIDE4ACTION software program in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

99. On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge, or in reckless disregard, of Plaintiffs' rights in the DECIDE4ACTION software program and has enabled Defendant illegally to obtain profit therefrom.

100. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

101. Alternatively, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendant's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

102. Plaintiffs further are entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

103. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the DECIDE4ACTION software program. Plaintiffs therefore are entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**COUNT FOUR**
**Federal Copyright Infringement of the DECIDE4ACTION v2 Program**
**(17 U.S.C. § 501)**

104. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

105. The DECIDE4ACTION v2 software program is an original literary work in the form of a computer program containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 et seq. Plaintiffs D4A SC is the nonexclusive licensee of the rights under copyright in and to the DECIDE4ACTION v2 software program that are at issue in this action and is entitled to sue for their infringement under 17 U.S.C. § 501(b). D4A Holding owns valid copyright registration for the DECIDE4ACTION v2 software program, attached as Exhibit D and identified as TX9-637-979.

106. Through Defendant's conduct alleged herein, including Defendant's copying, reproduction, distribution, and sale, of the Infringing Work, which is copied from, and substantially similar to protected expression in, the DECIDE4ACTION v2 software program, whether or not Defendant also copied any other Copyrighted Work, without Plaintiffs' permission,

Defendant has directly infringed Plaintiffs' exclusive rights in the DECIDE4ACTION v2 software program in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

107. On information and belief, Defendant's infringing conduct alleged herein was and continues to be willful and with full knowledge, or in reckless disregard, of Plaintiffs' rights in the DECIDE4ACTION v2 software program and has enabled Defendant illegally to obtain profit therefrom.

108. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiffs have been harmed and are entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Plaintiffs are also entitled to recovery of Defendant's profits attributable to Defendant's infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

109. Alternatively, Plaintiffs are entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendant's infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

110. Plaintiffs further are entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

111. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the DECIDE4ACTION v2 software program. Plaintiffs therefore are entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**COUNT FIVE**
**Misappropriation of Trade Secrets under the DTSA (18 U.S.C. § 1836 et seq.)**

112. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

113. Plaintiffs' Trade Secrets constitute "trade secrets" within the meaning of 18 U.S.C. § 1839(3). They consist of business, scientific, technical, and engineering information, including programs, codes, designs, methods, techniques, processes, and procedures; Plaintiffs have taken reasonable measures to keep such information secret; and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use.

114. Each Plaintiff is an "owner" of the Plaintiffs' Trade Secrets attributable to it within the meaning of 18 U.S.C. § 1839(4), because rightful legal or equitable title to, or a license in, each such trade secret is reposed in D4A SC, D4A Holding, or both.

115. Plaintiffs' Trade Secrets are related to products and services used in, or intended for use in, interstate and foreign commerce within the meaning of 18 U.S.C. § 1836(b)(1).

116. Defendant misappropriated Plaintiffs' Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by (a) acquiring them while knowing or having reason to know that they were acquired by improper means; and (b) using and disclosing them without Plaintiffs' express or implied consent at a time when Defendant knew or had reason to know that its knowledge of them was derived from or through CCCI, which owed Plaintiffs a duty to maintain their secrecy and limit their use, and was acquired through Defendant's inducement of CCCI's breach of that duty.

117. Defendant's inducement of CCCI's breach of its duty to maintain the secrecy of Plaintiffs' Trade Secrets, and Defendant's acquisition of Plaintiffs' Trade Secrets by means of that breach, constitute "improper means" within the meaning of 18 U.S.C. § 1839(6).

118. Defendant's acts of misappropriation occurred after May 11, 2016, the date of enactment of the DTSA, and are continuing. On information and belief, Defendant has also transferred, or made Plaintiffs' Trade Secrets accessible, to its development personnel located outside the United States.

119. Defendant's misappropriation of Plaintiffs' Trade Secrets was and is willful and malicious.

120. As a direct and proximate result of Defendant's misappropriation, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial. Pursuant to 18 U.S.C. § 1836(b)(3)(B), Plaintiffs are entitled to recover its actual losses and Defendant's unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss or, in the alternative, a reasonable royalty for Defendant's unauthorized disclosure and use of Plaintiffs' Trade Secrets.

121. Because Defendant's misappropriation was willful and malicious, Plaintiffs are entitled to exemplary damages in an amount up to two times the damages awarded pursuant to 18 U.S.C. § 1836(b)(3)(C), and to its reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

122. Defendant's misappropriation has caused and, unless enjoined, will continue to cause Plaintiffs immediate and irreparable injury for which there is no adequate remedy at law. Plaintiffs are therefore entitled to an injunction pursuant to 18 U.S.C. § 1836(b)(3)(A) prohibiting

any actual or threatened use or disclosure of Plaintiffs' Trade Secrets by Defendant and requiring Defendant to return Plaintiffs' Trade Secrets and all materials derived from them.

**COUNT SIX**
**Misappropriation of Trade Secrets under TENN. CODE ANN. § 47-25-1701 *et seq.***

123. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

124. Plaintiffs' Trade Secrets constitute "trade secrets" within the meaning of TENN. CODE ANN. § 47-25-1702(4). They consist of technical and nontechnical information, including programs, compilations, devices, methods, techniques, processes, and plans, that (a) derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use; and (b) are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

125. Defendant misappropriated Plaintiffs' Trade Secrets within the meaning of TENN. CODE ANN. § 47-25-1702(2) by (a) acquiring them while knowing or having reason to know that they were acquired by improper means; and (b) using and disclosing them without Plaintiffs' express or implied consent at a time when Defendant knew or had reason to know that its knowledge of them was derived from or through a person who had utilized improper means to acquire them, was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, and was derived from CCCI, which owed Plaintiffs a duty to maintain their secrecy and limit their use.

126. Defendant's inducement of CCCI's breach of its duty to maintain the secrecy of, and limit its use of, Plaintiffs' Trade Secrets constitutes "improper means" within the meaning of

TENN. CODE ANN. § 47-25-1702(1), which expressly includes the "breach or inducement of a breach of a duty to maintain secrecy or limit use."

127. Defendant's misappropriation of Plaintiffs' Trade Secrets was and is willful and malicious.

128. As a direct and proximate result of Defendant's misappropriation, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial. Pursuant to TENN. CODE ANN. § 47-25-1704(a), Plaintiffs are entitled to recover both its actual loss and Defendant's unjust enrichment caused by the misappropriation that is not taken into account in computing actual loss or, in the alternative, a reasonable royalty for Defendant's unauthorized disclosure and use of Plaintiffs' Trade Secrets.

129. Because Defendant's misappropriation was willful and malicious, Plaintiffs are entitled to exemplary damages in an amount not exceeding twice its award of damages pursuant to TENN. CODE ANN. § 47-25-1704(b), and to its reasonable attorneys' fees pursuant to TENN. CODE ANN. § 47-25-1705.

130. Defendant's actual and threatened misappropriation has caused and, unless enjoined, will continue to cause Plaintiffs irreparable injury for which there is no adequate remedy at law. Plaintiffs are therefore entitled to injunctive relief pursuant to TENN. CODE ANN. § 47-25-1703, including an order requiring Defendant to take affirmative acts to protect Plaintiffs' Trade Secrets and to return them.

**COUNT SEVEN**
**Statutory Procurement of Breach of Contract under TENN. CODE ANN. § 47-50-109**

131. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

132. TENN. CODE ANN. § 47-50-109 provides that "[i]t is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto," and that the person so procuring or inducing the breach "shall be liable in treble the amount of damages resulting from or incident to the breach of the contract."

133. The CCCI Agreement is a valid, lawful, and enforceable contract between D4A SC and CCCI, and is valid and enforceable under the North Carolina law that governs it pursuant to Section 26 of the 2007 Agreement.

134. Defendant had knowledge of the CCCI Agreement, including the restrictions it imposed on CCCI's copying, use, and disclosure of Plaintiffs' software, documentation, and confidential information under Sections 15, 16(b), and 17 of the 2007 Agreement and under the Support Agreement.

135. Defendant intended to induce CCCI to breach the CCCI Agreement and, by inducement, persuasion, and other means, as alleged above, did induce and procure CCCI's breach of the CCCI Agreement.

136. Defendant acted maliciously, in that its conduct was intentional, was undertaken in willful violation of D4A SC's known contractual rights and was without legal justification.

137. CCCI in fact breached the CCCI Agreement, including Sections 15(b), 16(b), and 17 of the 2007 Agreement and the Support Agreement, as alleged in paragraphs 66 through 75 above.

138. The breaches that Defendant procured are breaches of obligations that survive any termination of the CCCI Agreement, and they are independent of any right CCCI may have to terminate the CCCI Agreement for convenience.

139. Defendant's conduct was the proximate cause of CCCI's breach of the CCCI Agreement.

140. As a direct and proximate result of the breach of the CCCI Agreement procured by Defendant, D4A SC has suffered damages resulting from or incident to that breach in an amount to be proven at trial, including the loss of license and support revenue from CCCI, the loss of the confidentiality and value of Plaintiffs' Confidential Information and Licensed Deliverables, and the cost of responding to the breach.

141. Pursuant to TENN. CODE ANN. § 47-50-109, Defendant is liable to D4A SC in treble the amount of damages resulting from or incident to CCCI's breach of the CCCI Agreement.

**COUNT EIGHT**
**Common Law Intentional Interference with Contract**

142. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

143. The CCCI Agreement is a valid, lawful, and enforceable contract between D4A SC and CCCI.

144. Defendant had knowledge of the CCCI Agreement, including the restrictions in Sections 15, 16(b), and 17 of the 2007 Agreement and in the Support Agreement on CCCI's copying, use, and disclosure of Plaintiffs' software, documentation, and Confidential Information.

145. Defendant intended to induce CCCI to breach the CCCI Agreement and, through the conduct alleged above, did induce CCCI to breach it.

146. Defendant acted maliciously, intentionally, and without legal justification.

147. CCCI in fact breached the CCCI Agreement, including Sections 15(b), 16(b), and 17 of the 2007 Agreement and the Support Agreement, as alleged above, and Defendant's conduct was the proximate cause of that breach.

148. As a direct and proximate result of Defendant's conduct, D4A SC has suffered damages in an amount to be proven at trial.

149. Because Defendant acted intentionally and maliciously, D4A SC is also entitled to an award of punitive damages.

150. This Count is pleaded in the alternative to Count Seven, and D4A SC will elect between the remedies available under Count Seven and this Count to the extent required by law.

**COUNT NINE**
**Intentional Interference with a Business Relationship**

151. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

152. D4A SC has an existing business relationship with CCCI, a specific third party, which has existed for approximately twenty-five years and under which D4A SC currently invoice CCCI approximately $60,000 per month. That relationship encompasses the licensing and support of D4A SC's systems at eleven CCCI production facilities in eight states, including CCCI's facility in Nashville, Tennessee, under the CCCI Agreement.

153. D4A SC also had a reasonable expectation of continuing and expanding that relationship, including through renewals, upgrades, and deployments of D4A SC's systems at additional CCCI facilities. Under the CCCI Agreement, CCCI renews D4A SC's support services annually by purchase order, and D4A SC has provided those services continuously for many years.

154. Defendant had specific knowledge of D4A SC's business relationship with CCCI, not merely a general awareness of D4A SC's business dealings with others. On information and belief, Defendant was engaged by CCCI for the very purpose of replacing D4A SC's systems.

155. Defendant intended to cause the breach and termination of D4A SC's business relationship with CCCI so that Defendant could replace D4A SC as CCCI's provider.

156. Defendant used improper means to interfere with D4A SC's business relationship with CCCI, including means independent of any misappropriation of trade secrets, namely: (a) inducing CCCI to breach Sections 15, 16(b), and 17 of the 2007 Agreement and the Support Agreement, as alleged in Counts Seven and Eight; (b) infringing Plaintiffs' copyrights in the Copyrighted Works, as alleged in Counts One through Four; (c) misusing Plaintiffs' confidential information; and (d) engaging in unfair competition and sharp dealing contrary to established standards of the trade.

157. Even to the extent CCCI was free to terminate the CCCI Agreement or to decline to renew D4A SC's support services, CCCI was not free to disclose Plaintiffs' Confidential Information to Defendant or to permit Defendant to copy Plaintiffs' software, and Defendant was not free to obtain them. Defendant's interference was improper because of the means Defendant used to accomplish it, not merely because Defendant competed for CCCI's business.

158. As a direct and proximate result of Defendant's tortious interference, D4A SC has suffered damages in an amount to be proven at trial, including the loss of revenue from its relationship with CCCI.

159. Because Defendant acted intentionally and maliciously, D4A SC is also entitled to an award of punitive damages.

**COUNT TEN**
**Unjust Enrichment**

160. Plaintiffs repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

161. This Count is pleaded in the alternative pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

162. D4A SC conferred a benefit on Defendant, directly or indirectly, in the form of the decades of development work, know-how, system designs, configurations, workflows, documentation, and other work product embodied in Plaintiffs' systems at CCCI, which Defendant obtained through CCCI and used to develop, market, and deploy a competing suite of software without incurring the time and expense of independent development.

163. Defendant appreciated and knowingly accepted that benefit, including by using it to obtain CCCI's business and the revenue associated with it and by avoiding the cost of developing comparable systems on its own.

164. Defendant has accepted and retained that benefit under circumstances that make it inequitable for Defendant to retain it without paying D4A SC its value. No contract between D4A SC and Defendant governs the subject matter of this claim.

165. D4A SC is not required to exhaust its remedies against CCCI before proceeding against Defendant because the benefit at issue was received and retained by Defendant, and any recovery against CCCI would not reach Defendant's enrichment.

166. D4A SC is entitled to restitution from Defendant in an amount equal to the value of the benefit unjustly retained by Defendant, in an amount to be proven at trial.

WHEREFORE, Plaintiffs requests judgment against Defendant as follows:

1. That Defendant has violated Section 501 of the Copyright Act (17 U.S.C. § 501).

2. That Defendant has misappropriated Plaintiffs' Trade Secrets in violation of 18 U.S.C. § 1836 and TENN. CODE ANN. § 47-25-1701 et seq.; induced and procured the breach of the CCCI Agreement in violation of TENN. CODE ANN. § 47-50-109 and Tennessee common law; intentionally interfered with D4A SC's business relationships; and been unjustly enriched at D4A SC's expense.

3. Granting preliminary and permanent injunctions enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

(a)distributing, marketing, advertising, promoting, displaying, or selling or authorizing any third party to distribute, market, advertise, promote, display, or sell the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works;

(b) reproducing or distributing the Copyrighted Works, creating any derivative works based on the Copyrighted Works, or engaging in any activity that infringes Plaintiffs' rights in its Copyrighted Works;

(c) acquiring, accessing, using, or disclosing Plaintiffs' Trade Secrets or any information derived from them;

(d) inducing or assisting CCCI or any other licensee of Plaintiffs to breach any agreement with D4A SC;

(e) destroying, altering, or concealing any source code, repository history, documents, communications, or other materials relating to the Infringing Work, Plaintiffs, or CCCI; and

(f) aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (e).

4. That Defendant be ordered to provide an accounting of Defendant's profits attributable to Defendant's infringing conduct, including Defendant's profits from sales of the

Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Works.

5. That Defendant be ordered to destroy or deliver up for destruction all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringing conduct, including without limitation all remaining copies of the Infringing Work and any products and works that embody any reproduction or other copy or colorable imitation of the Copyrighted Works, as well as all means for developing them.

6. That Defendant be ordered to return to Plaintiffs all of Plaintiffs' Trade Secrets and confidential information, and all documents, files, and materials containing or derived from them, wherever located, including any copies transferred outside the United States, and to certify its compliance under oath, identifying every person and location, inside or outside the United States, that has received or had access to any of Plaintiffs' materials, and every customer and facility to which Defendant has offered, licensed, or installed the Infringing Work.

7. That Defendant, at its own expense, be ordered to recall the Infringing Work from any distributors, retailers, vendors, or others that have distributed the Infringing Work on Defendant's behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Infringing Work or the Copyrighted Works, and that Defendant be ordered to destroy or deliver up for destruction all materials returned to it.

8. Awarding Plaintiffs:

(a) Defendant's profits obtained as a result of Defendant's infringing conduct, including but not limited to all profits from sales and other exploitation of the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody

the Infringing Work or the Copyrighted Works, or in the Court's discretion, such amount as the Court finds to be just and proper;

(b) damages sustained by Plaintiffs as a result of Defendant's infringing conduct, in an amount to be proven at trial;

(c)should Plaintiffs so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits;

(d) Plaintiffs' reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(e) Plaintiffs' actual losses and Defendant's unjust enrichment caused by Defendant's misappropriation of Plaintiffs' Trade Secrets or, in the alternative, a reasonable royalty, pursuant to 18 U.S.C. § 1836(b)(3)(B) and TENN. CODE ANN. § 47-25-1704(a);

(f) exemplary damages of up to two times the damages awarded for Defendant's willful and malicious misappropriation, pursuant to 18 U.S.C. § 1836(b)(3)(C) and TENN. CODE ANN. § 47-25-1704(b);

(g) Plaintiffs' reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and TENN. CODE ANN. § 47-25-1705;

(h) treble damages pursuant to TENN. CODE ANN. § 47-50-109;

(i) compensatory and punitive damages on D4A SC's common-law claims, in an amount to be proven at trial; and

(j) restitution of the benefits by which Defendant has been unjustly enriched at D4A SC's expense.

9. Awarding Plaintiffs interest, including pre-judgment and post-judgment interest, on the foregoing sums and awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury of all issues so triable.

Dated: October 22, 2026

Respectfully submitted,

By: *<u>/s/ Seth R. Ogden</u>*

Seth R. Ogden (Tenn. Bar #034377)
Summer Basham Todd (Tenn. Bar #043329)
PATTERSON INTELLECTUAL PROPERTY LAW, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
Telephone: (615) 242-2400
sro@iplawgroup.com
sbt@iplawgroup.com

Amber N. Davis (*Pro Hac Vice Forthcoming*)
Erica M. Cipparone (*Pro Hac Vice Forthcoming*)
WOLTER VAN DYKE DAVIS, PLLC
1900 Summit Tower Blvd., Suite 140
Orlando, FL 32810
Telephone: (704) 926-7700
adavis@Savvyiplaw.com
ecipparone@Savvyiplaw.com

*Counsel for Plaintiffs DECIDE4ACTION SC INC.*